IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| Amanda Kennedy and Emanuel Magana, *On behalf of themselves and others similarly situated*, Plaintiffs, v. Longhorn Pizza, Inc., Defendant. | Case No. 3:20-cv-00223  Judge |

**COLLECTIVE ACTION COMPLAINT AND JURY DEMAND**

**Introductory Statement**

1. Plaintiffs Amanda Kennedy and Emanuel Magana, on behalf of themselves and all similarly-situated individuals, bring this action against Longhorn Pizza, Inc. based on Defendant's willful failure to compensate Plaintiffs and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

2. The claims in this case were originally asserted in the United States District Court for the District of Colorado, *Kennedy, et al., v. Mountanside Pizza, Inc.*, No. 19-cv-01199. On August 3, 2020, the Court dismissed Longhorn Pizza, Inc. without prejudice for lack of personal jurisdiction, so Plaintiffs now re-assert those claims in this Court.

3. Defendant is part of an enterprise that operates 68 Domino's Pizza restaurants in Colorado, Wyoming, California, and Texas.

4. Defendant is the entity that directly operates the 20+ stores that are located in the state of Texas (the "Longhorn Domino's stores").

5. Plaintiffs seek to represent the delivery drivers at the Longhorn Domino's stores.

6. Plaintiffs bring this action on behalf of themselves and similarly situated current and former delivery drivers at the Longhorn Domino's stores who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA by Defendant Longhorn Pizza, Inc.

## I. Jurisdiction and Venue

7. Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiffs' FLSA claims (First Claim for Relief).

8. Venue in this Court is proper under 28 U.S.C. § 1391(b) because some of the parties reside in this district and a substantial part of the events giving rise to the claims herein occurred in this district.

## II. Parties

**Plaintiffs**

**Amanda Kennedy**

9. Amanda Kennedy worked for Defendant in Denver, Colorado.

10. Amanda Kennedy is an "employee" of Defendant as defined in the FLSA.

11. Amanda Kennedy has given written consent to join this action.

**Emanuel Magana**

12. Emanuel Magana worked for Defendant in El Paso, Texas.

13. Emanuel Magana is an "employee" of Defendant as defined in the FLSA.

14. Emanuel Magana has given written consent to join this action.

**Defendant**

15. Defendant Longhorn Pizza, Inc. is a Texas corporation with its principal office mailing address is 5314 Paylor Lane, Lakewood Ranch, FL 34240.

16. Defendant Longhorn Pizza, Inc. is part of a Domino's Pizza franchise operation owned by Brent Hamill and referred to by Defendant as "Team WOW Domino's."

17. Upon information and belief, the other entities that make up the Team WOW operation are Mountainside Pizza, Inc., Southside Pizza, Inc., and Prima Pizza, Inc.

18. All of these entities maintain an address at 5314 Paylor Lane, Lakewood Ranch, Florida 34240, which is Brent Hamill's address.

19. Together, Brent Hamill and these entities are jointly and severally liable to the delivery drivers as employers under the FLSA. Plaintiffs are pursuing their claims against Brent Hamill and Mountainside Pizza, Inc. in the United States District Court for the District of Colorado.

20. The entities that make up the Team WOW Domino's Pizza operation form a single employer or single integrated enterprise as they share functional interrelation of operations, common management, centralized control of labor relations, and common ownership.

21. Alternatively, the entities that make up the Team WOW Domino's Pizza operation constitute joint employers as they co-determine matters governing essential terms and conditions of employment, share the ability to hire, fire and discipline employees, share the ability to affect compensation and benefits, and share authority to direct and supervise employees' performance.

22. For example, the Team WOW Domino's stores maintain job postings relating to stores in Colorado, Texas, and California on hralliance.net all under the brand of "Team WOW." The job postings describe the same or similar jobs no matter what state the store is in. https://www.hralliance.net/Apply/FindPosition.aspx?search=Search&slocationId=3098

23. Upon information and belief, the Team WOW Domino's operation is run as a single operation out of its headquarters in Florida, using the same or similar rules, procedures, and policies at all 68 of their Domino's locations.

24. Defendant Longhorn Pizza, Inc. also lists 5076 Doniphan, Suite B, El Paso, Texas 79932 as a registered address, which is a Domino's Pizza location.

25. Defendant has suffered or permitted Plaintiffs and other delivery drivers to work under the circumstances set forth below.

26. Defendant has control or custody of the employment of Plaintiffs and similarly situated employees, and the place where Plaintiffs and similarly situated employees worked.

27. Longhorn Pizza, Inc. has substantial control over Plaintiffs' and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

28. Upon information and belief, Longhorn Pizza, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

29. Longhorn Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated employees.

30. At all relevant times, Longhorn Pizza, Inc. maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

31. Longhorn Pizza, Inc. is an "employer" of Plaintiffs and similarly situated employees as that term is defined by the FLSA.

32. At all relevant times, Longhorn Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

33. Longhorn Pizza, Inc.'s gross revenue exceeds $500,000 per year.

III. **Facts**

**Class-wide Factual Allegations**

34. During all relevant times, Defendant operated the Longhorn Domino's stores.

35. The primary function of the Longhorn Domino's stores is to sell pizza and other food items to customers, whether they dine in, carry out, or have their food delivered.

36. Some or all of the Longhorn Domino's stores employ delivery drivers.

37. All delivery drivers employed at the Longhorn Domino's stores over the last three years have had essentially the same job duties—deliver pizza and other food items to customers, and complete various tasks inside the restaurant when they were not delivering pizzas.

38. The delivery drivers work "dual jobs"—one where they deliver food and receive tips, and another where they work inside the store completing non-tipped duties.

39. The delivery drivers' job duties inside the store were unrelated to the job duties they completed while on the road making deliveries.

40. During the relevant time period, Defendant's delivery drivers have been paid minimum wage minus a tip credit for hours delivering food.

41. During the relevant time period, Defendant's delivery drivers have been paid minimum wage or slightly above minimum wage for all hours worked inside the store.

42. Defendant requires delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendant's pizza and other food items.

43. Defendant requires delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, registration costs, financing, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

44. Pursuant to such requirements, Plaintiffs and other similarly situated employees purchased and/or incurred the costs relating to gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, paid for automobile financing and registration, and incur cell phone and data charges all for the primary benefit of Defendants.

45. The Longhorn Domino's stores do not track their delivery drivers' actual expenses and do not keep records of all of those expenses.

46. One or more of the Longhorn Domino's stores do not reimburse delivery drivers for their actual expenses.

47. None of the Longhorn Domino's stores reimburse delivery drivers for their actual expenses.

48. One or more of the Longhorn Domino's stores do not collect receipts or other records of automobile expenses incurred by their delivery drivers.

49. None of the Longhorn Domino's stores do not collect receipts or other records of automobile expenses incurred by their delivery drivers.

50. One or more of the Longhorn Domino's stores do not reimburse delivery drivers at the IRS standard business mileage rate.

51. None of the Longhorn Domino's stores reimburse delivery drivers at the IRS standard business mileage rate.

52. One or more of the Longhorn Domino's stores do not reimburse delivery drivers at a reasonable approximation of the drivers' expenses.

53. None of the Longhorn Domino's stores reimburse delivery drivers at a reasonable approximation of the drivers' expenses.

54. The Longhorn Domino's stores reimburse their delivery drivers on either a per-mile or per-delivery basis.

55. The Longhorn Domino's stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

56. The Longhorn Domino's stores' reimbursement arrangements do not fully reimburse delivery drivers for their expenses.

57. According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

   a. 2016: 54 cents/mile
   b. 2017: 53.5 cents/mile
   c. 2018: 54.5 cents/mile
   d. 2019: 58 cents/mile
   e. 2020: 57.5 cents/mile

58. As a result of the automobile and other job-related expenses incurred by Plaintiffs and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA.

59. At all relevant times, Defendant has applied the same or similar pay policies, practices, and procedures to all delivery drivers at their stores.

60. All of Defendant's delivery drivers worked under circumstances similar to that of Plaintiffs.

61. All of Defendant's delivery drivers were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

62. Because Defendant paid its drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses and other job expenses, the delivery drivers "kicked back" to Defendant an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

63. Defendant failed to properly claim a tip credit from the wages of its delivery drivers because it failed to properly inform the drivers of the tip credit requirements of the FLSA. *See* 29 U.S.C. § 203(m); 29 C.F.R. § 531.59(b).

64. Alternatively, Defendant failed to properly claim a tip credit from the wages of its delivery drivers because it failed to actually pay the wage rate it told the drivers it would pay after accounting for unreimbursed expenses.

65.     Defendant has previously settled a similar vehicle under-reimbursement case with approximately 300 delivery drivers involving only FLSA claims. *See Nelson v. Longhorn Pizza, Inc., et al*., No. 1:16-cv-2825, Doc. 95 (D. Colo. Oct. 4, 2018).

66.     Defendant has willfully failed to pay minimum wage to Plaintiffs and similarly situated delivery drivers at the Defendant's Domino's Pizza stores.

### Plaintiffs' Individual Factual Allegations

**Amanda Kennedy**

67.     Amanda Kennedy worked as a delivery driver at one of Defendant's Domino's stores located in Denver, Colorado from approximately November 2017 to May 2018.

68.     Amanda Kennedy worked dual jobs—one where she delivered food and received tips, and another where she worked inside the store completing non-tipped duties.

69.     Amanda Kennedy's job duties while inside the store were not related to her job duties while on the road completing deliveries.

70.     Amanda Kennedy was paid minimum wage minus a tip credit for the hours she worked completing deliveries. Specifically, she was paid between $6.28 and $7.18 per hour while on the road.

71.     Amanda Kennedy was paid Colorado minimum wage for the hours she worked inside the store.

72.     Amanda Kennedy was reimbursed on a per-mile basis, approximately $.20 to $.30 per mile.

73. Amanda Kennedy was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendant's pizza and other food items.

74. Amanda Kennedy was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, registration costs, cell phone service, GPS service, and other equipment necessary for delivery drivers to complete their job duties.

75. Amanda Kennedy purchased or incurred the cost related to gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, financing, and incur cell phone and data charges all for the primary benefit of Defendant.

76. Defendant did not track the actual expenses incurred by Amanda Kennedy.

77. Defendant did not collect receipts or other records of automobile expenses incurred by Amanda Kennedy during her employment.

78. Defendant did not reimburse Amanda Kennedy based on her actual delivery-related expenses.

79. Amanda Kennedy was not reimbursed at the IRS standard mileage rate for the miles she drove while completing deliveries.

80. Defendant's reimbursement policy did not reasonably approximate the expenses incurred by Amanda Kennedy.

81. During Amanda Kennedy's employment with Defendant, Defendant failed to adequately reimburse Amanda Kennedy for automobile and other job-related expenses.

82. Amanda Kennedy regularly approximately three deliveries per hour during the hours she worked as a delivery driver.

83. Amanda Kennedy regularly drove approximately 3 miles per delivery.

84. In 2018, for example, the IRS business mileage reimbursement has been $.545 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At the IRS standard business mileage rate, Defendant's policy under-reimbursed Amanda Kennedy by approximately $.295 ($.545 - $.25) per mile. Considering her estimate of about 3 average miles per delivery, Defendants under-reimbursed her about $.89 per delivery ($.295 x 3 miles). Because Kennedy estimates that she completed three deliveries per hour, Kennedy was under-reimbursed by approximately $2.67 per hour.

85. Defendant failed to pay Amanda Kennedy the tipped wage rate it promised it would pay her, therefore it was not permitted to claim a tip credit from her wages.

86. As a result of unreimbursed automobile expenses and other job-related expenses, Defendant has failed to pay Amanda Kennedy minimum wage as required by law.

**Emanuel Magana**

87. Emanuel Magana works as a delivery driver at one of the Longhorn Domino's stores located in El Paso, Texas from approximately February 2019 to present.

88. Emanuel Magana works dual jobs—one where he delivers food and receives tips, and another where he works inside the store completing non-tipped duties.

89. Emanuel Magana's job duties while inside the store are not related to his job duties while on the road completing deliveries.

90. Emanuel Magana is paid minimum wage minus a tip credit for the hours he worked completing deliveries. Specifically, he was paid $5.12 per hour while on the road.

91. Emanuel Magana is paid minimum wage for the hours he worked inside the store.

92. Emanuel Magana is reimbursed on a per-delivery basis, approximately $1.00 per delivery.

93. Emanuel Magana is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendant's pizza and other food items.

94. Emanuel Magana is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, registration costs, cell phone service, GPS service, and other equipment necessary for delivery drivers to complete their job duties.

95. Emanuel Magana purchases or incurs the cost related to gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffers automobile depreciation, financing, and incurs cell phone and data charges all for the primary benefit of Defendant.

96. Defendant does not track the actual expenses incurred by Emanuel Magana.

97. Defendant does not collect receipts or other records of automobile expenses incurred by Emanuel Magana.

98. Defendant does not reimburse Emanuel Magana based on his actual delivery-related expenses.

99. Emanuel Magana is not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

100. Defendant's reimbursement policy does not reasonably approximate the expenses incurred by Emanuel Magana.

101. Defendant does not adequately reimburse Emanuel Magana for automobile and other job-related expenses.

102. Emanuel Magana regularly makes approximately two deliveries per hour during the hours he works as a delivery driver.

103. Emanuel Magana regularly drives about 8 miles per delivery.

104. In 2019, for example, the IRS business mileage reimbursement has been $.58 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Based on Magana's estimate of 8 miles per delivery, Defendant reimburses Plaintiff at approximately $.125 per mile. At the IRS standard business mileage rate, Defendant's policy under-reimburses Emanuel Magana by approximately $.455 ($.58 - $.125) per mile, and about $3.64 per delivery ($.455 x 8 miles).

Based on his estimate of 2 deliveries per hour, Magana is under-reimbursed by approximately $7.28 per hour.

105. Defendant did not properly inform Emanuel Magana of the tip credit requirements of the FLSA.

106. Defendant fails to pay Emanuel Magana the tipped wage rate it promised it would pay him, therefore it was not permitted to claim a tip credit from his wages.

107. As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Emanuel Magana minimum wage as required by law.

### Collective Action Allegations

108. Plaintiffs bring the First Count on behalf of themselves and

All similarly situated current and former delivery drivers employed at the Longhorn Domino's stores owned, operated, and controlled by Defendant in Texas, during the three years prior to April 24, 2016, the date of the filing of the original Complaint, and the date of final judgment in this matter, who elect to opt-in to this action.

109. At all relevant times, Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendant's decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiffs and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiffs' claims are essentially the same as those of the FLSA Collective.

110. Defendant's unlawful conduct is pursuant to a corporate policy or practice.

111. Defendant is aware or should have been aware that federal law required it to pay employees minimum wage for all hours worked.

112. Defendant is aware or should have been aware that federal law required it to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

113. Defendant is aware or should have been aware that it is required to inform employees of the FLSA tip credit requirements before it is permitted to claim a tip credit against the employee's wages.

114. Defendant's unlawful conduct has been widespread, repeated, and consistent.

115. The FLSA Collective members are readily identifiable and ascertainable.

116. For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendant's records.

117. In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of a service award upon resolution of this action.

IV. **Causes of Action**

### FIRST CLAIM FOR RELIEF
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiffs and the FLSA Collective)**

118. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

119. Plaintiffs and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

120. Defendant failed to properly inform Plaintiffs and the FLSA Collective of the requirements for taking a tip credit under the FLSA.

121. Defendant did not pay the wage rate they promised to pay to Plaintiffs and the FLSA Collective after accounting for expenses incurred by Plaintiff and the FLSA Collective for Defendants' benefit.

122. Defendant paid Plaintiffs and the FLSA Collective a tipped wage rate for all hours worked completing deliveries, and state minimum wage for all hours worked inside the store.

123. Defendant required and continues to require Plaintiffs and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiffs and the FLSA Collective for said expenses.

124. By the acts and conduct described above, Defendant willfully violated the provisions of the FLSA and disregarded the rights of Plaintiffs and the FLSA Collective.

125. Plaintiff and the FLSA Collective have been damaged by Defendant's willful failure to pay minimum wage as required by law.

126. As a result of Defendant's willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**WHEREFORE**, Plaintiffs Amanda Kennedy and Emanuel Magana pray for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiffs and their counsel to represent the collective action members.

B. Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C. An award of unpaid minimum wages, unreimbursed expenses, unlawful deductions, and liquidated damages due under the FLSA.

D. An award of prejudgment and post-judgment interest.

E. An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

F. Such other legal and equitable relief as the Court deems appropriate.

## JURY DEMAND

Plaintiffs hereby demand a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

DATED: August 4, 2020

                    Respectfully submitted,

**DAVIE & VALDEZ P.C.**
1801 N. Stanton
El Paso, Texas 79902
(915) 838-1100

By: *John P. Valdez*

**JOHN P. VALDEZ**
State Bar No. 24047021
john@davievaldez.com

AND

/s/
Andrew R. Biller (*pro hac vice* forthcoming)
Andrew P. Kimble (*pro hac vice* forthcoming)
Nathan B. Spencer (*pro hac vice* forthcoming)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 202-0170
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*nspencer@billerkimble.com*

Counsel for Plaintiffs and the putative class and collective